IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOANNE MONDRAGON, as parent and guardian of J.W., a minor, | § § § | No. 31, 2026 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. K24C-05-023 |
| THE BOARD OF EDUCATION OF | § | |
| THE COLONIAL SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant Below, | § | |
| Appellee. | § | |

Submitted: July 8, 2026
Decided: July 22, 2026

Before **SEITZ**, Chief Justice; **TRAYNOR** and **LEGROW**, Justices.

## **ORDER**

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     Joanne Mondragon, as parent and guardian of J.W., a minor, appeals from the Superior Court's order granting summary judgment in favor of the Board of Education of the Colonial School District (the "District") on the basis of immunity under the Delaware State Tort Claims Act ("DSTCA").  Mondragon's claim arises from an assault on her five-year-old son by another student aboard a school bus. Mondragon contends that the Superior Court erred in holding that the District's

placement of the bus aide, Joseph Bogia, was a discretionary act rather than a ministerial one and in deciding as a matter of law that the District was not grossly negligent. Because Delaware law treats hiring and assignment decisions and the manner and method of student supervision as discretionary acts, and because the record—viewed in the light most favorable to Mondragon—would not permit a reasonable jury to find an extreme departure from the ordinary standard of care, we affirm the Superior Court's decision that the District was immune under the DSTCA.

(2) J.W. is a child with autism who is nonverbal. During the 2023–2024 school year, he rode District Bus 276, a bus that carried twelve to thirteen students with special needs—each with an Individualized Education Program ("IEP"). The bus was staffed by a driver and a single bus aide, Mr. Bogia.[1] On October 5, 2023, during the roughly twenty-three-minute bus ride, another student ("Student 1") repeatedly struck J.W. with his fists and elbows, pulled his hair, and ultimately stabbed him in the back with a pencil, causing a puncture wound.[2] Because J.W. is nonverbal, he could not call out for help.[3] Neither Mr. Bogia nor the driver observed the assault; Mr. Bogia was attending to a different student who was experiencing an outburst at the front of the bus. The driver believed that Student 1 waited to act until

---

[1] App. to Appellant's Opening Br. at A32, A55, A82–84.

[2] *Id*. at A23–26, A54–55, A85–86.

[3] *Id*. at A22, A49, A54–55, A70.

Mr. Bogia's attention was diverted.[4] The attack was discovered only when another child noticed blood on J.W.'s clothing as he exited the bus.[5] J.W. sustained the puncture wound, scratches, bruises, and significant psychological injury.[6]

(3)   The District hired Mr. Bogia in 2016, and he had served as an aide for approximately seven years when the incident occurred.[7] Mondragon identifies several features of Mr. Bogia's background that, in her view, rendered him unfit: he had no prior childcare or special-education experience; he was hired based on the recommendation of a former girlfriend who worked for the District; he was unable to read and therefore could not independently read the bus aide guidelines or the students' IEPs; he had a DUI conviction from roughly a decade before his hiring; he had been suspended from high school as a teenager for bringing a knife to school; in January 2023 he was suspended without pay for failing to report that a child had tipped over in a stroller; and, after the incident involving J.W., he was charged with offensive touching in connection with a separate matter.[8] The District responds that Mr. Bogia completed its standard hiring and onboarding process, including a background check and a child-protection registry search, and that he received two

---

[4] *Id.* at A55, A86.

[5] *Id.* at A87.

[6] *Id.* at A35–36.

[7] *Id.* at A78–79.

[8] *Id.* at A21–22, A29–31, A78–79, A82–84, A90–91; App. to Appellee's Answering Br. at B5.

days of in-person training, an hour of instruction on properly securing students, and a test route before being placed on Bus 276.[9]

(4)     The Superior Court granted summary judgment on the basis of immunity.  Under the DSTCA, a public employee is entitled to immunity only if the act or omission (1) was discretionary rather than ministerial; (2) was done in good faith and in the belief that the public interest would be best served; and (3) was done without gross or wanton negligence.[10]  Mondragon challenges the first and third elements on appeal.

(5)     We review a grant of summary judgment *de novo* to determine whether the undisputed facts, viewed in the light most favorable to the nonmoving party, entitle the moving party to judgment as a matter of law.[11]  Whether a particular act is discretionary or ministerial under the DSTCA is a question of law that we also review *de novo*.[12]

(6)     The Superior Court correctly held that the District's placement of Mr. Bogia was a discretionary act.  A ministerial act is one performed in a prescribed manner without using individual judgment, whereas an act is discretionary when the actor faces "a range of reasonable choices" in carrying it out; the distinction is

---

[9] Appellee's Answering Br. at 6; App. to Appellee's Answering Br. at B29, B41–44.

[10] 10 *Del. C.* § 4001.

[11] *Handler Corp. v. Tlapechco*, 901 A.2d 737, 743 (Del. 2006).

[12] *Sussex Cnty. v. Morris*, 610 A.2d 1354, 1357–59 (Del. 1992).

"always one of degree," turning on the presence of rules or regulations that minimize opportunities for independent action.[13] Delaware courts have consistently held that the decision to hire a particular individual is discretionary.[14] And although the general duty to supervise students is ministerial, the manner and method by which to provide adequate supervision is discretionary.[15] What level of supervision is adequate on the bus route, and which aide can best provide it, are matters of degree and judgment, not the mechanical execution of a prescribed task.[16]

(7) The Superior Court also correctly held that no reasonable jury could find gross or wanton negligence. Gross negligence, which we have equated with criminal negligence, is "negligence representing an extreme departure from the

---

[13] *Greenfield ex rel. Ford v. Miles*, 211 A.3d 1087, 1099 (Del. 2019) (quoting *Morris*, 610 A.2d at 1359); *Simms v. Christiana Sch. Dist.*, 2004 WL 344015, at *8 (Del. Super. Jan. 30, 2004).

[14] *Gutierrez v. Advanced Student Transp., Inc.*, 2015 WL 4460342, at *4 (Del. Super. July 14, 2015) ("Delaware courts interpreting the DSTCA have held that the decision to hire is a discretionary decision."); *Simms*, 2004 WL 344015, at *8 (concluding that a district's decisions regarding the hiring, training, and supervision of its employees are discretionary and therefore immune absent gross or wanton negligence).

[15] *Tews v. Cape Henlopen Sch. Dist.*, 2013 WL 1087580, at *4 (Del. Super. Feb. 14, 2013); *Jester v. Seaford Sch. Dist.*, 1991 WL 269899, at *4 (Del. Super. Nov. 4, 1991), *aff'd*, 610 A.2d 725, 1992 WL 151786 (Del. 1992) (TABLE).

[16] Mondragon nevertheless argues that the heightened regulatory environment of a special-needs school makes the decision to provide adequate supervision ministerial. She relies on 14 *Del. Admin. C.* § 1150-8.3.10, which directs bus aides to "[a]ssist [p]upils with disabilities as prescribed in the [p]upil's IEP," and argues that, because Mr. Bogia could not read the IEPs on a bus where every student had one, the District necessarily breached a non-discretionary command. Appellant's Opening Br. at 13. Section 1150-8.3.10, however, fixes what an aide must do once assigned to a bus—assist pupils as prescribed in their IEPs; it does not define whom the District must hire, what qualifications it must require, or the means by which IEP information must reach the aide. Those decisions are left to the District's discretion.

ordinary standard of care."[17] Wanton negligence requires conduct "so unreasonable and dangerous that a person knows or should know that an imminent likelihood of harm can result," reflecting "conscious indifference" and an "'I don't care' attitude."[18]

(8) Mondragon argues that, viewed collectively, Mr. Bogia's inability to read the students' IEPs, his hiring through a personal connection, his asserted lack of training to supervise special-needs children, and his criminal history would let a reasonable juror find that the District acted with gross or wanton negligence when Mr. Bogia was assigned. She further contends that the special-needs context demanded greater care and that the Superior Court made an improper factual finding that there was "no failure to act" when the assault continued over roughly twenty-three minutes.[19]

(9) The record does not support a finding of gross or wanton negligence. Many of the facts that Mondragon marshals are temporally or substantively disconnected from Mr. Bogia's competence as an aide or from the assault itself. The DUI conviction predated his hiring by roughly a decade; the knife-related suspension occurred when he was himself a high-school student more than twenty years earlier;

---

[17] *Hughes ex rel. Hughes v. Christiana Sch. Dist.*, 950 A.2d 659, 2008 WL 2083150, at *3 (Del. 2008) (TABLE); *see also Jardel Co. v. Hughes*, 523 A.2d 518, 530 (Del. 1987).

[18] *Gutierrez*, 2015 WL 4460342, at *6; *see also McHugh v. Brown*, 125 A.2d 583, 586 (Del. 1956).

[19] Appellant's Opening Br. at 9–15.

6

and the offensive-touching charge arose from a separate adult matter that post-dated the incident involving J.W., so the District could not have considered it when placing Mr. Bogia on the bus.[20] The two facts most directly tied to Mr. Bogia's fitness—his inability to read and the January 2023 suspension—are likewise insufficient, even considered together. The suspension was a single disciplinary matter in roughly seven years of otherwise satisfactory service; it involved a failure to report rather than to act, caused no injury, and was investigated and addressed through progressive discipline.[21] And although Mr. Bogia could not read the IEPs himself, the District presented evidence that he completed in-person training, instruction on securing students, and a test route, and the IEP information could be conveyed to him verbally.[22]

(10) Finally, that the attack may have unfolded over the course of the ride does not convert the District's conduct into gross negligence. Mr. Bogia was actively supervising another student in distress when the assault occurred, and the driver believed that Student 1 deliberately waited until Mr. Bogia's attention was diverted. A lapse in observation while attending to another child—however regrettable its consequences—reflects, at most, the kind of supervisory imperfection

---

[20] App. to Appellant's Opening Br. at A29–31 (offensive touching); A77–80 (DUI conviction, knife-related suspension).

[21] App. to Appellee's Answering Br. at B22–23.

[22] App. to Appellant's Opening Br. at A79, A81, A92–93.

that sounds in ordinary negligence; it is not the conscious indifference that gross or wanton negligence requires.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice